206    APPELLATE COURTS OF ILLINOIS.

Stocker v. Leonard Machinery & Tool Co. et al., 231 Ill. App. 206.

## Emma Stocker, Appellee, v. Leonard Machinery & Tool Company and Olaf E. Oleson, Appellants.

## Gen. No. 28,004.

1. PLEADING—*verified plea requisite to raise issues as to execution of note.* In an action against the maker and an indorser before delivery, to enforce a promissory note signed by rubber stamp with the name of the corporate maker with the signature of an individual written below, the issues of the proper execution and of the authority of the individual to execute it on behalf of the company can only be raised so as cast the burden of proof thereof upon the payee suing on the note, by a verified plea, under Practice Act, sec. 52, Cahill's Ill. St. ch. 110, ¶ 52, and neither notice of special matters nor an affidavit of merits is sufficient for that purpose.

2. NEGOTIABLE INSTRUMENTS—*sufficiency of evidence as to real debtor in action on note.* In an action by the payee to enforce a note signed by a company, with the signature of president thereof individually written below, the loan is not shown to have been made to the president personally by evidence that he is the payee's brother-in-law and conducted the preliminary negotiations for the loan and execution of the note and by the lender's answer to a preliminary question that she loaned him the money, where her entire testimony shows that she did not mean that the loan was made to him individually and there is other evidence showing the loan to have been to the company.

3. AGENCY—*when officer of borrower not shown to have acted as agent for lender in negotiating loan.* In an action by the payee to enforce against a corporation maker and an indorser, before delivery, a promissory note, the president of the maker, whose name was written below that of the company, is not shown to have acted as the payee's agent in negotiating the loan so as to charge her with his knowledge that the directors had by resolution limited his authority to issue notes for the company or make such resolution admissible, by evidence that he was the payee's brother-in-law and transacted the negotiations for the loan and the execution of the note by the company and her testimony that she "left everything" to him in such transactions, where her testimony shows that she left it to him to see that the details of the execution and indorsement of the note were properly attended to, and it appears that he acted at the request of the indorser in ar-

ranging for the loan to secure needed funds for the company's business.

4. HARMLESS ERROR—*excluding evidence not reversible where fact otherwise proven.* Error in excluding the only book of account kept by the corporation maker of the note sued on, to show that no entry was ever made therein for the amount of the note, is not reversible where the defendant otherwise got before the jury the fact that such book did not show the receipt of the sum represented by the note from the payee.

5. NEGOTIABLE INSTRUMENTS—*sufficiency of evidence as to execution of note.* In an action by the payee to enforce a promissory note signed by a corporation maker and indorsed by the principal stockholder before delivery, judgment for. the payee is sustained by evidence that the president of the company negotiated with the payee for the loan at the request of the indorser, that he partially prepared the note and then sent it to the indorser in another city for his indorsement, that it was indorsed and returned to the president who then placed the company signature thereon by rubber stamp, added his individual signature below the company name and delivered it to the payee, and that the company received all the proceeds, although the money was deposited in the president's personal bank account, in which all company funds were kept, as against evidence tending to show that it was originally executed by the president individually and indorsed for his benefit alone.

6. NEGOTIABLE INSTRUMENTS—*when indorsement before delivery binding on indorser.* One who indorsed a note before delivery to the payee is bound thereby as against the contention that the indorsement was made before the note was signed by any maker, where the evidence shows that the note represented a loan to a company and was partially prepared by the president thereof, who had negotiated the loan at the request of the indorser, that it was then sent to the indorser in another city, was indorsed by him and returned to the president who placed the company signature thereon with a rubber stamp, signed his own name below, delivered it to the payee and received the money from her, and that the indorser was the principal stockholder in the maker and interested in securing the loan for the company, and that the procedure in question was followed at his direction.

7. HARMLESS ERROR—*when repeated admonitions from court to witness not reversible error.* Uncalled for admonitions by the court to witnesses to confine their answers to questions to matters within their own personal knowledge do not constitute reversible error.

8. USURY—*usurious interest not recoverable against indorser before delivery.* In an action by the payee against a maker and the indorser of a note before delivery, it was error to permit recovery of interest as provided for in the note, the rate being usurious,

notwithstanding the maker could not avail itself of that defense under Cahill's Ill. St. ch. 74, ¶ 11, where the indorser raised the issue by his pleadings, pursuant to paragraph 6; and the judgment in such case will be affirmed only on remittitur of the amount of the interest.

Appeal by defendants from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed on remittitur. Opinion filed December 26, 1923. Rehearing denied January 9, 1924.

LYMAN, ADAMS & BISHOP, for appellants.

A. G. DICUS, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, Emma Stocker, brought this action of assumpsit, as the payee of a promissory note, against the Leonard Machinery & Tool Company as maker of the note and Oleson as indorser.

The note was for $1,000 and provided for interest at eight per cent. It was signed "Leonard Machinery & Tool Co." which was in the form of a rubber stamp, and below the name of the company was the signature "Mark L. Leonard" in ink. Leonard was the president of the company. The defendants filed a plea of the general issue, a notice of special matter which would be interposed in defense of the suit at the trial under that plea and an affidavit of merits. The notice of special matter was to the effect that the defendants would raise the question of the usurious rate of interest provided for in the note; that they would contend that Leonard did not have authority to execute the note on behalf of the company; that the rubber-stamp name of the company was placed on the note by Leonard after it had been executed and delivered, which amounted to a material alteration of the note and the substitution of one maker for another; that

the note was without consideration as to both defendants, and that neither of the defendants ever received any of the proceeds of the note. Substantially the same matters were set up by the defendants in the affidavit of merits which they filed. The issues were submitted to a jury, resulting in a verdict for the plaintiff for the sum of $1,083.12, and judgment for that amount was duly entered against the defendants. To reverse that judgment the defendants have perfected this appeal.

The plaintiff submitted her proof and offered the note in evidence and the defendants objected and contended that it was inadmissible in the absence of further proof of its proper execution and authority in Leonard to execute it on behalf of the company. The objection was overruled and the note was received in evidence. The trial court did not err in that ruling. In order to raise the issue of the proper execution of the note and the authority of Leonard, to execute it on behalf of the company, and cast upon the plaintiff the duty of submitting evidence tending to show authority in him, before the note could be received in evidence or in order to enable the plaintiff to make out a prima facie case, it was necessary for the defendants to raise those issues by a verified plea, under the provisions of section 52 of our Practice Act [Cahill's Ill. St. ch. 110, ¶ 52]. Notice of special matters would not be sufficient. *Bailey v. Valley Nat. Bank,* 127 Ill. 332. Nor would an affidavit of merits. *Hansen v. Hale,* 44 Ill. App. 474; *Lord & Thomas v. Sanitary Drinking Cup Co.,* 191 Ill. App. 150.

It is one contention of the defendants that the plaintiff made the loan, for which this note was given, to Leonard personally. They also contend that in the transaction represented by the loan, Leonard acted as the plaintiff's agent, and that she was charged with knowledge of the fact, which knowledge he possessed, as the president of the defendant company, that the

board of directors had passed a resolution to the effect that no note of the corporation should be issued unless expressly approved by the board, and the defendants contend, on this theory, that the trial court erred, in sustaining plaintiff's objection, when defendants offered that resolution in evidence. In our opinion, neither theory is supported by the evidence in the record. Leonard was the plaintiff's brother-in-law. She did say, in answer to a preliminary question, that she had loaned him $1,000. But when her entire testimony is considered, it is quite clear that she did not mean, nor did she ever consider, that she had made the loan to him personally. And, in the course of her testimony, she also said, she "left everything with reference to this transaction to Mr. Leonard." But again, on a consideration of the whole testimony, it is clear that Leonard was not acting as her agent. She testified that Leonard was the superintendent or the president of the defendant company and that she did not consult anybody connected either with the company or Oleson about the note except Leonard; that she and her husband considered that the note would be all right if Leonard signed it, as president of the company, and Oleson indorsed it, as they understood the latter was "the money man."

Leonard, called as a witness by the defendants, was asked if he had any conversation with Oleson about the note sued on and he answered, "Yes, he requested that I see if I could get some money for the concern, to help keep it in business, as he had been unable to raise money." Oleson was the principal stockholder of the company, holding more than half the stock. It seems that Oleson was also connected with another corporation with an office at East Chicago and Leonard testified that the note was made out down at that office and that Oleson wrote his indorsement on it and then sent it up to the office of the defendant company in Chicago where he, Leonard, put the company stamp

and his own signature on it and delivered it to the plaintiff. It was quite natural that the plaintiff should leave to her brother-in-law, the president of the defendant company, such details as were incident to the execution of the note and the procuring of the indorsement of Oleson, and, in so doing, she in no sense constituted him her agent in the matter. It follows that the argument that the resolution of the board of directors of the defendant company was improperly excluded is not applicable.

It further appears from the evidence that the defendant company kept no bank account but all funds belonging to the company were deposited in Leonard's personal bank account and that such was the case with the $1,000 received from the plaintiff. Leonard testified that he used none of this money personally but that it was all checked out on company accounts, about $100 of it coming to him on salary account.

This testimony, given by the witness Leonard, submitted by the defendants, was contradicted by the defendants' remaining witnesses. Oleson testified that the note was sent down to his office for indorsement and that it then was signed "Mark L. Leonard" but that it did not have the company stamp on it; that Leonard had asked him to indorse his personal note. One Likes, office manager for the defendant company, testified that he had seen the note before it was delivered and that it then contained the signature of Leonard but not the rubber stamp of the company; that he typed the note for Leonard and gave it to him and about two days later he saw it with Leonard's signature on it and Oleson's indorsement also but no rubber stamp. At one point in his testimony this witness testified that Leonard told him this $1,000 had been put in the bank and that he knew it had later been paid out in the regular course of business by the company to pay the company's bills and at another point he testified that the company got none of the

money, so far as he knew, and later that the company got some of the money but he did not know how much. One Masters, the auditor of the company, gave testimony tending to corroborate the defendant Oleson's account of the making and indorsing of the note and also tending to show that the company never received any of this money. On the latter point the defendants offered the cash book of the company in evidence, that being the only book of account kept by the company. In our opinion, it was competent and material and should have been admitted but we do not consider its exclusion such error as would justify a reversal of the judgment. On several occasions, through the testimony, the defendants got before the jury the fact that there was no item in the cash book showing the receipt of $1,000 from the plaintiff. This was all that the defendants sought to prove by the book and the fact was not contradicted anywhere.

It is quite apparent, from the record, that the jury believed the testimony of the plaintiff and of Leonard and did not believe that of the other witnesses. The testimony was in a number of respects in sharp conflict. We have read the entire testimony, as it appears in the record, carefully, and, in our opinion, the verdict for the plaintiff may not be said to be against the manifest weight of the evidence. If the jury believed Leonard's account as to the note being made out down at the office of Oleson, in East Chicago, and indorsed by him there and then sent up to the office of the defendant company, where he put the company stamp on it and his own signature, the judgment was proper as against both the company and Oleson. It is contended that Oleson could not be liable under the circumstances to which Leonard testified, for there may not be a valid indorsement without a complete instrument and when Oleson indorsed it, it was not complete for no one at all was designated as maker in the note. The argument is not tenable. Leonard tes-

tified that the company was in need of funds; that Oleson, the principal stockholder, had tried to raise some money but had not been able to; that he, Leonard, telephoned him that he could get $1,000 from his sister-in-law and Oleson told him to get it; that Oleson had asked him to see if he could get some money for the company; that after he had arranged the loan in question he called Oleson over the telephone and told him about "the arrangement" and to whom to make the note payable; that the note was sent to Leonard at the defendant company's office, drawn to the order of plaintiff, and with Oleson's indorsement on it; that as soon as he received it he put the company's stamp and his signature on it and delivered it to the plaintiff and received $1,000 from her. If those were the circumstances, and the jury apparently believed they were, and we cannot say that such finding was against its manifest weight of the evidence, the indorsement was valid and binding. Oleson was interested in having the company get the money. It was procured at his direction, and he indorsed the note after making it out to the plaintiff's order, and sent it to the office of the defendant company for the purpose of having it duly executed and delivered. Under such circumstances the indorsement is just as binding as if it had been made after the name of the maker was put on the note.

The defendants urge further that the verdict against them was influenced by prejudicial remarks and rulings of the trial court, which, it is argued, practically amounted to an instruction to the jury to find for the plaintiff. These remarks, of which defendants complain, occurred, for the most part, when the witnesses Likes and Masters were on the stand. The substance of the remarks was to the effect that the witnesses were to confine their answers to questions—to matters within their own personal knowledge. It may be that the court enjoined the witnesses to this effect more

times than it would seem, from a reading of the type-written pages of the record, the occasion called for, but we find no reversible error in the court's remarks.

In our opinion, the judgment recovered by the plaintiff should have carried no interest. The interest called for in the note was usurious. While the defendant company could not avail itself of that fact [Cahill's Ill. St. ch. 74, ¶ 11], the defendant Oleson might and he did, by the pleadings filed, and therefore there should be no recovery of interest as to him [Cahill's Ill. St. ch. 74, ¶ 6]. The amount of the judgment which represents interest is $80.

The judgment of the circuit court will be affirmed, on condition that the plaintiff file a remittitur to the extent of $80 in this court within ten days.

*Affirmed on remittitur.*

TAYLOR, P. J., and O'CONNOR, J., concur.